STATE of North Dakota, Plaintiff
and Appellee,

v.

David John MERTENS, Defendant
and Appellant.

Cr. No. 618.

Supreme Court of North Dakota.

May 12, 1978.

Specially Concurring Opinion
July 12, 1978.

As Amended July 12, 1978.

Rehearing Denied Aug. 3, 1978.

David Garcia, Devils Lake, for defendant and appellant.

Lewis C. Jorgenson, Asst. State's Atty., Devils Lake, for plaintiff and appellee.

SAND, Justice.

The defendant, David John Mertens, was found guilty by a Ramsey County district court jury of the offense of possessing a controlled substance with intent to deliver in violation of §§ 19–03.1–05, Schedule I, paragraph 4, and 19–03.1–23, North Dakota Century Code (a felony). The district court entered a judgment of conviction, from which the defendant appealed.

The defendant, on appeal, raised several issues of error, the principal one of which is that the search warrant was improperly granted and that the evidence attained thereunder should have been suppressed.

The defendant contended that the affidavit upon which the search warrant was issued was inadequate in that it did not provide sufficient information upon which the magistrate could independently determine probable cause.

The affidavit of the special investigator upon which the search warrant was issued stated that an informer, whom he had known for several years and who had cooperated with him in the past, informed him that Mertens was going to receive a package by first-class mail containing microdot acid hits, a. k. a. blotters or LSD, from a person named "Tom" and that the package was being mailed from San Francisco, California. He (the special investigator) then contacted the Devils Lake postmaster and informed him of the package that was coming. The postmaster advised him (the special investigator) to be at the postoffice at 8:00 a. m. on 19 January 1977 to ascertain if there was such a package. The special investigator came to the Devils Lake postoffice at the specified time and in the company of the postmaster observed a package wrapped in brown paper, approximately 3½ inches long, 3½ inches wide, and 2 inches thick, with red electrical tape over the entire bottom, addressed to Dave Mertens, Lakeview Dairy, Devils Lake, North Dakota, with a return address of "T. Mack" San Francisco, California. The postmaster informed him (the special investigator) that the package in question would be delivered to Dave Mertens in the normal course of mail delivery on 20 January 1977 at the Lakeview Dairy. He (the special investigator) was aware from his own personal knowledge that Dave Mertens was employed at Lakeview Dairy and was involved in the use and distribution of controlled substances.

The resolution of the validity of the search warrant in this instance will for all practical and legal purposes resolve the suppression issue because both depend upon the same factual situation.

■ In determining whether or not the affidavit establishes the required probable cause for a search warrant, we apply practical rather than abstract concepts. The magistrates and the courts interpret the affidavits in a commonsense and realistic fashion. Usually such affidavits are drawn by non-lawyers and seldom under ideal conditions. Technical common law pleadings are no longer desirable or required, and likewise neither should technical language be required in an affidavit for a search warrant. Observations and investigations of officers prompted by information received from an informant and recited in an affidavit are a valid basis for establishing probable cause for search warrants. *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

"Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States v. Ventresca,* supra, 380 U.S. at 109, 85 S.Ct. at 746.

In this case, as disclosed by the suppression hearing, the special investigating officer who received the information from an informant and who made the investigation "gave the information to the assistant state's attorney . . . and he dictated it to his secretary." This statement apparently refers to the preparation of the affidavit for the search warrant. The suppression hearing also disclosed that the magistrate, before issuing the search warrant, inquired of the officer about the credibility and reliability of the informant upon whom the investigator relied.

In determining the validity of a search based upon a warrant issued by a magistrate, as distinguished from a search without a warrant on the officer's own determination of probable cause, "the reviewing courts will accept evidence of a less 'judicially competent or persuasive character than would have justified an officer acting on his own without a warrant.'" *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). The different standard is justified on the grounds that the magistrate is neutral and detached, whereas the officer is actively involved.

"Although the reviewing court will pay substantial deference to judicial determinations of probable cause [by a magistrate], the court must still insist that the

magistrate perform his 'neutral and detached' function and not serve merely as a rubber stamp for the police." *Aguilar v. Texas, supra.*

Also, hearsay evidence may be used to establish probable cause for a search warrant. *Jones v. United States,* 362 U.S. 257, 270, 80 S.Ct. 725, 735, 4 L.Ed.2d 697, 708 (1960).

The North Dakota Supreme Court, in *State v. Dove,* 182 N.W.2d 297 (N.D.1970), observed that the United States Supreme Court established certain guidelines for the courts to follow in determining whether an affidavit given in support of an application for a search warrant was sufficient to show probable cause. This court then said:

"Although an affidavit may be based on hearsay information it need not reflect the direct personal observations of the affiant, *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, the magistrate must be informed of some of the underlying circumstances from which the informant concluded that narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, see *Rugendorf v. United States,* 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887, was 'credible' or his information 'reliable.' " [*Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).]

In *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), the United States Supreme Court had under consideration the probable cause requirement to make an arrest without a warrant and a search incident to the warrant. The evidence upon which the officer relied:

". . . established that one Marsh, a federal narcotic agent with 29 years' experience, was stationed at Denver; that one Hereford had been engaged as a 'special employee' of the Bureau of Narcotics at Denver for about six months, and from time to time gave information to Marsh regarding violations of the narcotic laws, for which Hereford was paid small sums of money, and that Marsh had always found the information given by

Hereford to be accurate and reliable. On September 3, 1956, Hereford told Marsh that James Draper (petitioner) recently had taken up abode at a stated address in Denver and 'was peddling narcotics to several addicts' in that city. Four days later, on September 7, Hereford told Marsh 'that Draper had gone to Chicago the day before [September 6] by train [and] that he was going to bring back three ounces of heroin [and] that he would return to Denver either on the morning of the 8th of September or the morning of the 9th of September also by train.' Hereford also gave Marsh a detailed physical description of Draper and of the clothing he was wearing, and said that he would be carrying 'a tan zipper bag,' and that he habitually 'walked real fast.'

"On the morning of September 8, Marsh and a Denver police officer went to the Denver Union Station and kept watch over all incoming trains from Chicago, but they did not see anyone fitting the description that Hereford had given. Repeating the process on the morning of September 9, they saw a person, having the exact physical attributes and wearing the precise clothing described by Hereford, alight from an incoming Chicago train and start walking 'fast' toward the exist. He was carrying a tan zipper bag in his right hand and the left was thrust in his raincoat pocket. Marsh, accompanied by the police officer, overtook, stopped and arrested him. They then searched him and found two 'envelopes containing heroin' clutched in his left hand in his raincoat pocket, and found the syringe in the tan zipper bag."

The Court, in determining whether or not the foregoing facts satisfied the probable cause requirements, noted that *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879, held that the evidence to determine probable cause need not meet the admissibility test in a criminal trial. It quoted from *Brinegar,* 338 U.S. at 175, 69 S.Ct. at 1310, as follows:

"In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."

The Court then concluded that the officer had probable cause and reasonable grounds under the facts presented earlier to make the arrest and search and stated that:

"Probable cause exists where 'the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543."

■ There is substantial similarity regarding the information in *Draper* and in this case, except in the instant case the affidavit did not specifically state that the informant was reliable. However, this was supplied by the magistrate's inquiry of the affiant on the reliability and credibility of the informant before issuing the search warrant. We also think that the statement that the affiant had known the informant for several years and that the informant had cooperated with him in the past is the equivalent to saying that the affiant knew the informant for several years and that he had been reliable in the past. (This interpretation is supported by the affiant's testimony at the suppression hearing that the informant's information had been helpful and proven correct in prior cases.) The reliability feature was further supplied with actual facts, namely, the arrival of the package addressed to the defendant with a return address, as previously stated by the

informant to the special investigator. This information (the arrival of the package) was in the affidavit which was submitted to the magistrate by the special investigating officer before the search warrant was issued.

In passing on the validity of the search warrant, we are limited to the information upon which the magistrate issued the warrant. Any information available but not submitted to the magistrate is irrelevant. *Aguilar v. Texas, supra.*

■ The information submitted to the magistrate was more than a suspicion, it was factually sufficient to permit him to reasonably believe the probability of a crime being committed by a certain person.[1] The information relied upon by the magistrate need not establish a prima facie showing of criminal activity. Probable cause is sufficient. *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). It stands to reason that the circumstances in each case will determine whether or not the facts were sufficient to establish probable cause.

We conclude that the information contained in the affidavit in the instant case met the constitutional safeguards and provided the necessary probable cause for the issuance of the search warrant.

In *United States v. Van Leeuwen*, 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970), the United States Supreme Court held that a 24-hour delay in mailing the package and the service of the warrant cannot be said to be unreasonable within the Fourth Amendment under the situation in that case where, because of the time differential, the officials in another place could not be immediately reached. In the instant case, the affidavit stated that the package would be delivered in the normal course of mail delivery. There was no evi-

1. Here the officer's affidavit disclosed that he investigated the information received from the informant and found it correct in every respect, even in detail, except as to the contents of the package. The magistrate, based upon the affidavit, had reasonable grounds to believe that the information as to the contents of the package was reliable because the information other-

wise received from the informant checked out to be correct in every detail. The fact that the package, when opened, contained a controlled substance could not have been relied upon nor do we consider it as constituting justification in retrospect for issuing the search warrant. See *United States v. Alexander*, 559 F.2d 1339 (5th Cir. 1977).

dence of any significant unjustifiable delay in delivering the package while the search warrant was secured.

The defendant, as another main issue, contended that the trial court committed error by not requiring the State to disclose the identity of the informer and by not permitting the defendant to inquire about any communications had between the informant and the special investigator who made and filed the affidavit with the magistrate and upon which the search warrant was issued. The defendant relies heavily upon *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), in support of his argument that the court erred by not requiring the State to disclose the name of the informant.

The privilege to withhold the identity of persons who furnished information of violations of law to officers charged with the enforcement of the law is based primarily on the need for the furtherance and protection of the public interest in effective law enforcement. This privilege recognizes the obligation of citizens to communicate any knowledge they may have on the commission of crimes to law enforcement officials. We believe many· citizens will be encouraged to provide such information if they are assured or if there is reasonable certainty that they will remain anonymous. *Roviaro v. United States, supra*, and *Scher v. United States*, 305 U.S. 251, 59 S.Ct. 174, 83 L.Ed. 151 (1938).

In some instances the law enforcement official is dependent upon a reliable informer for information on criminal activities.

The nondisclosure concept is also supported by § 31–01–06(4), NDCC, which, in substance, provides that:

"A person cannot be examined as a witness in the following cases:

.    .    .    .    .

"4. A public officer cannot be examined as to communications made to him in official confidence when the public interests would suffer by the disclosure."

If disclosure were required in every instance, the sources of information on law violations would "dry up."

However, if the disclosure of the informer's identity or the substance of his communication will be relevant or helpful to the defendant in his defense or is essential to a fair determination of the charge, the privilege must give way. *Roviaro v. United States, supra*, and *Scher v. United States, supra*. See also, *Rugendorf v. United States*, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964).

No hard-and-fast rule has been fashioned governing disclosure. The determination whether a disclosure is or is not justified requires balancing the public interest with the interest of the defendant, which takes into account the totality of the particular circumstances of each case and particularly such matters as the crime charged, the probable defenses, the possible significance of the informant's testimony, and other relevant factors.

Rule 509(c)(2) of the recently adopted Rules of Evidence in North Dakota provides, in part, as material here, that:

"If it appears in the case that an informer may be able to give testimony relevant to any issue in a criminal case .   .   . and the informed public entity invokes the privilege, the court shall give the public entity an opportunity to show *in camera* facts relevant to determining whether the informer can, in fact, supply that testimony. The showing will ordinarily be in the form of affidavits, but. the court may direct that testimony be taken if it finds that the matter cannot be resolved satisfactorily upon affidavit. If the court finds there is reasonable probability that the informer can give the testimony, and the public entity elects not to disclose his identity, in criminal cases the court on motion of the defendant or on its own motion shall grant appropriate relief, which may include one or more of the following: granting the defendant additional time or a continuance, relieving the defendant from making disclosures otherwise required of him,

prohibiting the prosecuting attorney from introducing specified evidence, and dismissing charges. . . . All counsel and parties are permitted to be present at every stage of proceedings under this subdivision except a showing *in camera* at which no counsel or party shall be permitted to be present."

The record in this instance discloses that a suppression hearing was held.

In *State v. Loucks*, 209 N.W.2d 772, 779 (N.D.1972), this court said:

"The United States Supreme Court has held that the name of an informant need not be disclosed to the magistrate nor at a suppression hearing unless it is necessary to show his reliability, in which event disclosure may be required prior to the trial. *McCray v. Illinois*, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); *Rugendorf v. United States*, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964); *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed. 639 (1957); *Scher v. United States*, 305 U.S. 251, 59 S.Ct. 174, 83 L.Ed. 151 (1938)."

■ In *Roviaro, supra,* upon which the defendant relies, the informant helped set up the criminal occurrence and played a prominent part in it. His testimony might have supported a claim of entrapment or might have placed doubt upon the identity of the package involved. The informant could possibly also have given testimony that the defendant did not have knowledge of the contents of the package. Furthermore, the prosecution used the informant's conversation with the defendant while riding in the defendant's car. The facts in the *Roviaro* case are substantially different and can be readily distinguished from the instant case. In the instant case, no suggestion has even been made that the informant may have participated in the unlawful transaction or in any manner may have acted so as to constitute entrapment. In fact the suppression hearing indicates that the defendant not only made the initial contact but followed it up when the initial contact did not produce the package. Under this arrangement it is difficult to con-

ceive how entrapment on the part of the informant could be a defense.

The defendant has failed to establish necessary criteria requiring the disclosure of the informant.

The United States Supreme Court, in *McCray v. Illinois*, 385 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967), said:

"Nothing in the Due Process Clause of the Fourteenth Amendment requires a state court judge in every such hearing to assume the arresting officers are committing perjury. 'To take such a step would be quite beyond the pale of this Court's proper function in our federal system. It would be wholly unjustifiable encroachment by this Court upon the constitutional power of States to promulgate their own rules of evidence . . . in their own state courts . . . ' *Spencer v. Texas*, 385 U.S. 554, 568–569, 87 S.Ct. 648, 17 L.Ed.2d 606, 617."

In *Rugendorf* the court distinguished the facts from those in *Roviaro* where the informant had played a direct and prominent part as the sole participant with the accused in the very offense for which the defendant was charged, whereas in *Rugendorf* there was not even an intimation of such a situation. We make the same distinction of the facts in the instant case from those in *Roviaro*. It has not been suggested that the informant participated in the offense. Nor was there a reliable showing that such a possibility existed.

The defendant also contended that the evidence seized (package) should have been suppressed.

■ We have examined the information contained in the affidavit and the evidence presented at the suppression hearing and conclude that the trial court acted in accordance with the rules of law established by the United States Supreme Court, stated earlier in this opinion, and that the court did not err in denying the motion to suppress. The information contained in the affidavit gave reasonable grounds for the magistrate to believe that a crime was being committed. The reliability of the infor-

mant was established by the special investigator in his affidavit, which stated that he was informed that the defendant was about to receive a package with a certain return address, which information in fact turned out to be correct and that subsequently a package arrived by mail for the defendant, and thus even if the affidavit per se may have been short on reliability, the actual facts as developed by the special investigator before he made his affidavit established the reliability.

Defendant also contends that the court erred in not giving the State an opportunity to produce facts *in camera* relevant to determining whether or not the informant could in fact have supplied the information after the State invoked its privilege not to disclose the identity of the informant. At the suppression hearing the defendant requested the court to conduct an *in camera* proceeding to permit him to establish certain matters.

The earlier discussion on the defendant's contention relating to the suppression of evidence covers this point. It appears quite obvious that defendant misread or misinterpreted the following provision of Rule 509(c)(2) of the Rules of Evidence:

> "All counsel and parties are permitted to be present at every stage of proceedings under this subdivision *except a showing in camera at which no counsel or party shall be permitted to be present.*" [Emphasis added.]

Furthermore, the *in camera* proceeding is predicated on the proposition that the court finds that there is reasonable probability that the informer can give testimony helpful to the defendant, etc. In the instant case, the court, after the suppression hearing, indicated that the testimony of the informer would not be helpful to the defendant.

■ The court, in determining whether or not an *in camera* proceeding should be held, may take into consideration any material or evidence presented to it in a suppression hearing or at any proceeding before it [Rule 509(c)(2), NDREv] and is not limited to information submitted prior to the is-

suance of the warrant as it is in proceedings to determine the validity of a search warrant. To ask the court not to take into consideration what was revealed or produced at the suppression hearing would be totally unrealistic. The evidence introduced at the suppression hearing supported the court's decision not to hold an *in camera* proceeding.

A mere allegation or suspicion by the defendant that the name of the informer will be helpful is not enough. Some degree of probability is required before we, as a reviewing court, will consider whether or not the trial court abused its discretion in not holding an *in camera* proceeding under Rule 509(c)(2), NDREv.

The defendant has failed to establish the need for an *in camera* proceeding and the record of the suppression hearing militates against rather than supports the need for such proceeding.

■ The defendant contends that the trial court committed error in the manner in which it examined and admitted State exhibits 6 and 7 and also Exhibit 5.

The defendant's additional claim of error rests upon the attorney's description of what transpired at the trial, after the State rested, with reference to these exhibits:

> "Your Honor, we wish the record to show that at the trial on August 2, 1977, after the State had offered exhibits 6 and 7 to which the defendant objected and before being received in evidence, offer[ed] the objection and the Court examined[d] 6 and 7 and compare[d] the same with exhibit 1 which was already in evidence in full view of the jury and carefully scrutinized the proposed exhibit in connection with exhibit 1.
>
> "I just wanted that made a part of the record, Your Honor.
>
> "THE COURT: It's in the record."

We believe a trial judge who is genuinely concerned regarding the admission of exhibits objected to by counsel will look at the exhibits and, if necessary, will scrutinize them before ruling on their admissibility.

The above-quoted statement refers to exhibits 6 and 7, which were offered and immediately considered by the judge before he ruled that they were admissible. The record does not reflect that the judge made any comments or that he made any gestures which could be interpreted as having some significance on either exhibits 6 or 7. Exhibit 5, a Western Union money order receipt, was offered in evidence earlier in the trial, but after an objection was voiced by the defendant the prosecution stated to the court that "this will be connected more strongly as the case goes along." The court then said it would defer ruling on the objection. Exhibit 6 consisted of a small scratch pad on which were names and numbers on the various sheets, and was taken from the defendant's billfold. Exhibit 7 consisted of a cardboard with the name of Tom Dimmick. Exhibit 1 was a brown wrapping paper with red tape around it and was used to wrap a package 3 inches long, 3 inches wide, and 3 inches in depth, and contained a return address "T. Mack, SF, Cal 940." Exhibits 5, 6, and 7 were all received in evidence at the same time. From the record we have before us we are unable to conclude that the court acted improperly when it examined exhibits 6 and 7 in connection with exhibit 1. The instructions given by the court at the end of the trial covered this. The trial court admonished the jury by saying:

"If counsel or I [meaning the court] have made any comments or statements concerning the evidence which you find are not warranted by the evidence, you should wholly disregard them and rely upon your own recollection or observation."

The defendant has totally failed to meet the burden of proof that the court acted improperly. We further conclude that it was not error for the court to admit exhibits 1, 5, 6, and 7. Whatever connection there was, if any, between these exhibits was a matter of logic on which the respective parties could have and probably did argue to the jury. The court's scrutiny of the exhibits could also be argued as casting doubt on them. The argument of the defendant is not persuasive and is without merit.

The defendant also contended that the court committed error by asking questions of a witness for the clarification of terms used, and particularly asking what those terms may mean in street language. The court inquired of the witness if the term "hallucinating" in street language meant taking a "trip," to which the witness replied yes, and further explained. The court also inquired if these "trips" take on various characteristics, to which the witness replied that they do and volunteered that they are also known as "flash backs." We find no error in this respect. These questions helped the jury to more fully understand, and any question which is solely for the purpose of developing a better understanding generally does not constitute error.

The defendant finally contended that the verdict is contrary to the weight of evidence and that the verdict is not supported by substantial evidence.

In *State v. Erickson,* 231 N.W.2d 758, 765 (N.D.1975), we said:

"When reviewing a judgment entered upon a jury verdict, an appellate court has only a limited function. See *State v. Steele,* 211 N.W.2d 855 (N.D.1973), wherein we held in Syllabus ¶ 14:

'It is not the function of the supreme court to substitute its judgment for that of the jury but instead only to examine the evidence presented in order to determine whether it supports the verdict and whether the defendant received a fair trial.' "

Similarly, in *State v. Johnson,* 231 N.W.2d 180, 188 (N.D.1975), with reference to the weight and sufficiency of the evidence, this court observed:

"As we said in *State v. Champagne,* 198 N.W.2d 218 (N.D.1972), where the jury has weighed the evidence, determined the credibility of the witnesses who appeared before it, and rendered its verdict, it is not for us to substitute our judgment for that of the jury. It is only for us to

determine whether the evidence supports the verdict."

The evidence in this case clearly established that the defendant had in his possession controlled substances which were prohibited by law. The evidence further established that the quantity was of a sufficient amount to be compatible with the conclusion that the controlled substances were not for personal consumption but were for delivery, as charged in the information.

The other contentions raised by the defendant were either inter-related with the contentions already discussed and determined or are without merit and deserve no further comment.

Having concluded that the trial court did not commit prejudicial error, and the defendant having failed to establish any justifiable reason for the granting of a new trial, we conclude that the trial court did not err in denying the motion for a new trial.

The judgment of the trial court based on the jury verdict is affirmed.

ERICKSTAD, C. J., and PAULSON and PEDERSON, JJ., concur.

VOGEL, Justice, concurring specially.

I concur in the result.

I am satisfied that the affidavit for the search warrant was inadequate. It said nothing about reliability. A mere statement that the informant had been known to the affiant for years and had "cooperated" says nothing about the reliability of the informant. There are many kinds of cooperation which have nothing to do with accuracy of information.

Under Rule 41(c), N.D.R.Crim.P., the magistrate to whom an affidavit for search warrant is presented may "require the affiant or other witnesses to appear personally and may examine under oath the affiant and any witnesses he may produce, provided that such proceeding shall be taken down by a court reporter or recording equipment and made part of the proceedings." It appears from the testimony at the subsequent suppression hearing, before the district judge, that the magistrate made some inquiry of the affiant officer as to reliability of the informant and was told that he had supplied accurate information in the past. This is probably enough to provide probable cause, as the majority opinion says it does.

I must add, however, that there is no indication whatever in the record before us that the proceedings before the magistrate complied with the requirement of Rule 41(c) that the testimony was taken under oath or that it was "taken down by a court reporter or recording equipment and made part of the proceedings." It is certainly no part of the record before us, and there is no indication that the rule was complied with at the magistrate level. However, the point was not raised on this appeal and I conclude that it was waived by the defendant.[1]

I must also point out that the majority opinion is inconsistent on a very important point. It states, correctly, that "In passing on the validity of the search warrant, we are limited to the information upon which the magistrate issued the warrant. Any information available but not submitted to the magistrate is irrelevant. *Aguilar v. Texas, supra.*" And, again, the majority opinion is correct in stating, in footnote 1, that "The fact that the package, when opened, contained a controlled substance could not have been relied upon nor do we consider it as constituting justification in retrospect for issuing the search warrant."

Yet the majority opinion says, inconsistently with the above, that " . . . even

1. The purpose of requiring a record of the testimony at the time the warrant was obtained was to avoid the sort of question we have here as to what basis the magistrate had for issuing the search warrant. Our Rule 41(c) differs from the parallel Federal rule in requiring such a record. The reason for the record is stated in the Commentary to our rule:

". . . The requirement that the testimony be recorded by a reporter, if available, and if no reporter is available, then by use of a recording device at the direction of the magistrate, is to insure an adequate basis for determining the sufficiency of the evidentiary grounds for the issuance of the search warrant if a motion to suppress is later filed."

**456**

if the affidavit per se may have been short on reliability, the actual facts as developed by the special investigator before he made his affidavit established the reliability." And the majority opinion also says: "The reliability feature was further supplied with the actual facts, namely, the arrival of the package addressed to the defendant with a return address, as previously stated by the informant to the special investigator." The arrival of the package is an innocent event, aside from knowledge of its contents. As pointed out in *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), facts which are innocent on their surface will not support a finding of probable cause for a search without a showing of facts and circumstances which take away the appearance of innocence. The appearance of innocence was removed only after the package was opened and its contents were analyzed, and these events took place long after the search. In *United States v. Alexander,* 559 F.2d 1339 (5th Cir. 1977), the officers had information that illicit drugs would be delivered by boats, the names of which were given to them by an informant. It was held that this "did not provide sufficient indicia of reliability to satisfy *Aguilar-Spinelli.*" 559 F.2d at 1342. The point I make is that the validity of a warrant cannot be determined, in whole or in part, on the basis of events subsequent to the issuance of the warrant. The rule is the same as the rule in warrantless searches, regarding which we held, in *State v. Iverson,* 219 N.W.2d 191 (N.D.1974):

"A search unlawfully undertaken is not made valid by evidence of crime which it brings to light." 219 N.W.2d at 194.

And,

"A belief, however well founded, that contraband is concealed within a dwelling house furnishes no justification for a search without a warrant." 219 N.W.2d at 193.

The arrival of a package, even though anticipated and forecast by the informant, is an innocent event which provides no confirmation of the reliability of the informant unless and until the contents are ascertained. That event, taking place after the issuance of the warrant, cannot be used to bootstrap reliability where there was none before.

I concur, solely on the basis that the inadequate affidavit was sufficiently bolstered by evidence of reliability given to the magistrate by the affiant officer, so as to supply probable cause, the apparent violation of the recording requirement having been waived. I place no weight whatever upon the arrival of the package, an innocent event which cannot supply probable cause without proof of its contents, which became apparent only after the warrant was issued and therefore could not supply probable cause which must exist at the time the warrant is issued.