## (February 27, 1973)

■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v. STEPHEN H. WOLZER and BRUCE B. LONG, Respondents.— Appeal from an order of the County Court of Ulster County, entered April 20, 1972, which granted defendants' motion to suppress evidence seized pursuant to a search warrant. The defendants were indicted for criminal possession of dangerous drugs in the third degree and sixth degree and for criminal possession of instruments for the administering of narcotic drugs. The drugs defendants allegedly possessed were seized by police officers during a predawn raid on their college dormitory room, conducted pursuant to a search warrant issued the previous day by a Town Justice. The trial court held that probable cause for the issuance of the warrant had not been established. The primary issue presented on this appeal is whether the affidavit of the police officer on his request for a search warrant set forth sufficient allegations of fact to satisfy the disinterested Magistrate that there was reasonable cause to believe that the property sought by the search would be found in the place designated in the warrant. In order to resolve this question the pertinent parts of the affidavit must be examined together with principles of current case law. The affidavit stated: "2. That on March 21, 1971 at about 7:00 A.M.,

while performing my duties as a police officer, I had occasion to meet * * *. age 14 * * *. New Paltz, New York as he walked along the street. As a result of my interview of this subject, I subsequently found him in possession of a small plastic bottle which contained five (5) pink colored tablets and small foil wrapped piece of hashish. * * * told me that he had purchased these items on March 20, 1971 at about 8:30 P.M. at Room 213D, LeFevre Hall, State University of New York, New Paltz, New York from a person who he knew only as 'Steve'. He told me that he had been at a dance at the New Paltz Middle School, and that upon leaving, went to Room 213D, LeFevre Hall, where he knocked on the door and went into the room where 'Steve' was living. They conversed for a few minutes, and then * * * asked 'Steve' if he could buy some LSD and Hashish. 'Steve' then sold him six (6) pink colored LSD tablets for six ($6.00) dollars, taking them from a matchbox which was on a shelf on the left hand side of the room as you enter. 'Steve' then also sold him the piece of hashish for five ($5.00), taking that from the drawer of his desk. 3. On March 21, 1971 I gave the small plastic bottle containing the suspected drugs, LSD and Hashish, to Investigator C. T. Searles of the BCI, Kingston, New York, who in turn gave the bottle and its contents to Investigator C. S. Van Wagenen, BCI, Kingston, New York. Investigator Van Wagenen personally transported same to New York State Police Laboratory on March 30, 1971 and personally observed the laboratory analysis which was performed on the contents of the bottle, that analysis confirming that the five (5) pink pills were LSD, and that the contents of the foil wrapper was hashish. 4. On March 31, 1971 I showed several pictures of suspected narcotics users to * * * and from those he identified one particular photograph as being the same subject from whom he had purchased the LSD and Hashish on March 20, 1971. 5. That this photograph identified by * * * has been identified as Stephen Hugh Wolzer, dob 7/10/51, and that this subject is named in the Student Directory of the State University of New York, New Paltz, New York with his address listed as 720 Fort Washington, New York, New York (and) Room 213D, LeFevre Hall. 6. Further, that Stephen Hugh Wolzer is a person whose name appears in the files of the New York State Identification and Intelligence System, he having been previously arrested for criminal possession of marijuana, hashish and LSD." Thus the source of the information that set the police officers in motion was an "informer" and the rules as to his reliability and the reliability of his information must apply. Since the informer is identified, we turn to examine his credibility and to seek the necessary corroboration of the information he supplied (*People* v. *Schnell,* 30 A D 2d 631). The inculpatory statement of the 14-year-old boy who freely admitted purchasing LSD from respondent Wolzer, and giving detailed information about the transaction and the circumstances leading up to it, falls within the rule of a declaration against interest. The informant was found with narcotics in his possession which, indeed, could have subjected him to prosecution. However, possession alone, under certain circumstances, might well have been innocent. But when the informant, rather than protesting that the material had been found by him or given to him by a friend for delivery to another without knowledge of its identity, volunteered that he had purchased the drugs "from Steve" for stated prices, he was in effect admitting to criminal possession of dangerous drugs which cannot be classified as other than a declaration against his penal interest (cf. *People* v. *Brown,* 26 N Y 2d 88). The facts presented seem to fit precisely within the rule set forth by Mr. Chief Justice Burger in *United States* v. *Harris* (403 U. S. 573) when he said at page 583: "Common sense in the important daily affairs of life would induce a prudent and dis-

interested observer to credit these statements. People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility — sufficient at least to support a finding of probable cause to search. That the informant may be paid or promised a 'break' does not eliminate the residual risk and opprobrium of having admitted criminal conduct." As additional corroboration and for the purpose of lending credibility to the informer are the allegations that while the informer knew his supplier only as "Steve", when he later identified him from a series of photographs, it turned out his name was "Steve" and he was known to be a drug user by the local police and further indicated in the files of the New York State Identification and Intelligence System. One of the very important functions of this comprehensive and complicated intelligence system is to provide corroboration for information under the very factual situation presented in this case. While it may be argued that the affidavit in this case contains only the "bare bones" necessary to support the issuance of a warrant, that is all that is necessary. This question of draftsmanship was referred to in *United States* v. *Harris* (403 U. S., at p. 577) where the court set forth the admonition in *United States* v. *Ventresca* (380 U. S. 102, 108): "[T]he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." Piecing all the facts together and peering into the Magistrate's mind, we find it difficult to say, in this case, that he did not have probable cause to issue a warrant. In such proceedings the issue is not guilt beyond a reasonable doubt but probable cause for believing the occurrence of a crime and the secreting of evidence in specific premises. (*Brinegar* v. *United States,* 338 U. S. 160.) Order reversed, on the law and the facts, and motion denied. Staley, Jr., J. P., Greenblott, Cooke, Kane and Reynolds, JJ., concur.