**STATE of North Dakota,
Plaintiff-Appellee,**

v.

**Ronnie SCHMEETS,
Defendant-Appellant.**

**Crim. No. 661.**

Supreme Court of North Dakota.

April 30, 1979.

Clifford C. Grosz, State's Atty., Fessenden, for plaintiff and appellee.

Michael N. Steffan, New Rockford, for defendant and appellant.

PAULSON, Justice.

The defendant, Ronnie Schmeets ["Schmeets"], has appealed to this court from the judgment of conviction in the Wells County District Court on a charge of possession of a controlled substance. Schmeets was charged with the possession of a controlled substance after police officers discovered cocaine in his apartment during a search that was conducted with a search warrant. Schmeets brought a motion to suppress the evidence obtained during the search of his apartment on the grounds that the search warrant had been improperly executed at night in violation of Rule 41(c) of the North Dakota Rules of Criminal Procedure and that the affidavit upon which the search warrant was based was insufficient to establish probable cause. The district court denied Schmeets' motion to suppress the evidence, Schmeets was convicted, and he has appealed. We reverse.

During the afternoon and evening of December 15, 1977, two juvenile girls visited an apartment in Harvey, North Dakota, that was occupied by Schmeets and two other men.[1] The girls went to Schmeets' apartment at approximately noon and did not attend their afternoon school classes. Schmeets, the two girls, and others drank alcohol and smoked marijuana throughout the afternoon and evening. Testimony indicated that during the afternoon some people came to the apartment, requested to purchase cocaine, and did purchase from Schmeets a substance that appeared to be cocaine. Testimony at the suppression hearing also indicated that other drugs, including LSD and hashish, were on the premises.

That evening Barry Weigel, a police officer for the city of Harvey, was notified by the girls' parents that the girls were missing and had not been in school that afternoon. Officer Weigel then went to Schmeets' apartment to look for the girls and was told that they were not there.

At approximately ten o'clock that evening, Officer Barry Weigel located the girls walking down a street in Harvey. From their actions and speech he determined that they were under the influence of alcohol or drugs. The girls told Officer Weigel that they had been drinking and smoking marijuana at Schmeets' apartment and that they had observed the sale of some cocaine at the apartment. After he took the girls to the home of one of the girls' parents, Officer Barry Weigel notified the Harvey Chief of Police and Wells County Deputy Sheriff David Weigel, Barry Weigel's brother, of the incident. Deputy Sheriff David Weigel, who was at Fessenden at the time, was notified by telephone.

Deputy Sheriff David Weigel testified at the suppression hearing that Barry Weigel had told him that the girls were under the influence of alcohol or drugs; that the girls had admitted to Barry Weigel that they had been drinking and had been using drugs at Schmeets' apartment; that the girls stated to Barry Weigel that they had witnessed a sale of cocaine at the apartment that afternoon; and that additional drugs were still in the apartment. Deputy Sheriff David Weigel then relayed this information by telephone to Wells County State's Attorney Clifford C. Grosz, who was in Harvey. State's Attorney Grosz prepared an affidavit for a search warrant and drove thirty miles to Fessenden to obtain the search warrant from Judge Samuel D. Krause. Deputy Sheriff David Weigel and State's Attorney Grosz met with Judge Krause at his home after twelve o'clock midnight on December 16, 1977. Deputy Sheriff Weigel signed the affidavit for a search warrant and Judge Krause issued a warrant to search the apartment of Ronnie Schmeets. The search warrant was issued based upon Deputy Sheriff David Weigel's affidavit which states, in pertinent part:

"That the Harvey Police had picked up to [sic] juveniles near the Harvey Grade school and that the said girls are under the influence of drugs and that they had

---

1. *State v. Hager*, 271 N.W.2d 476 (N.D.1978) is based upon the same fact situation.

obtained the drugs from a Terry Hager and a Ronnie Schmeets and that they were at the place of the above two individuals and they had stated that concaine [sic], hashish oil and Marijuana were at the place of 309 Adams, Ave., Harvey, N.Dak."

Judge Krause testified at the suppression hearing that he had also relied upon certain unrecorded statements of Grosz and David Weigel that were not made under oath. No recorded, sworn testimony, other than the affidavit, was taken by Judge Krause before he issued the search warrant at 12:10 a.m. on December 16, 1977.

The search warrant was executed by law enforcement officers at approximately 1:30 a.m. on December 16, 1977. Schmeets was arrested and was charged with possession of a controlled substance. Following a preliminary hearing, Schmeets was bound over to district court for trial. On April 10, 1978, he was arraigned in district court, pleaded not guilty to the charge of possession of a controlled substance, and moved to suppress the evidence obtained in the search of his apartment. Schmeets' motion to suppress was denied on April 28, 1978, after a hearing. On September 7, 1978, Schmeets was convicted of possession of a controlled substance after a trial without a jury and was sentenced to two years in the State Penitentiary. At the trial, his attorney properly preserved his objection to the district court's denial of Schmeets' motion to suppress evidence.

The following issues have been raised on appeal:

(1) Was the search warrant invalid because the evidence upon which it was based was insufficient to establish probable cause?

(2) Was the search warrant improperly executed at night in violation of Rule 41(c), N.D.R.Crim.P.?

We will first determine whether or not the search warrant was issued without probable cause in violation of the United States Constitution or the North Dakota Constitution. We must first consider what evidence was relied upon by Judge Krause in determining probable cause.

In the present case, Judge Krause testified at the suppression hearing that he had issued the search warrant based upon the information contained in Deputy Sheriff David Weigel's affidavit and in the unrecorded, unsworn, oral statements made by State's Attorney Grosz and Deputy Sheriff Weigel. Rule 41(c), N.D.R.Crim.P., provides, in pertinent part:

"(c) Issuance and contents. A warrant shall issue only on an affidavit or affidavits sworn to or sworn recorded testimony taken before a state or federal magistrate and establishing the grounds for issuing the warrant. . . . Before ruling on a request for a warrant the state or federal magistrate may require the affiant or other witnesses to appear personally and may examine under oath the affiant and any witnesses he may produce, provided that such proceeding shall be taken down by a court reporter or recording equipment and made part of the proceedings. . . ." [Emphasis added.]

The Rule specifically states that a search warrant may only be issued based upon sworn affidavits or sworn recorded testimony taken before the magistrate. As stated in the Explanatory Note to Rule 41(c), N.D. R.Crim.P., in pertinent part:

" . . . The requirement that the testimony be recorded by a reporter, if available, and if no reporter is available, then by use of a recording device at the direction of the magistrate, is to insure an adequate basis for determining the sufficiency of the evidentiary grounds for the issuance of the search warrant if a motion to suppress is later filed." [Criminal Rules Manual, N.D.R.Crim.P.]

■ Because the oral statements of Deputy Sheriff David Weigel and State's Attorney Grosz were not given under oath and were not recorded as required by Rule 41(c), N.D.R.Crim.P., the statements could not be used to provide probable cause for the issuance of the search warrant. Therefore, David Weigel's sworn affidavit provided the only basis for Judge Krause's determi-

nation that probable cause existed for the issuance of the search warrant.

■ The Fourth Amendment to the United States Constitution, Section 18 of the North Dakota Constitution, and Rule 41(c), N.D.R.Crim.P., require that no warrant shall be issued until probable cause for its issuance has been established. In *Berger v. State of New York,* 388 U.S. 41, 55, 87 S.Ct. 1873, 1881, 18 L.Ed.2d 1040 (1967), the United States Supreme Court stated:

> "Probable cause under the Fourth Amendment exists where the facts and circumstances within the affiant's knowledge, and of which he has reasonably trustworthy information, are sufficient unto themselves to warrant a man of reasonable caution to believe that an offense has been or is being committed. *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925); *Husty v. United States,* 282 U.S. 694, 700–701, 51 S.Ct. 240, 241–242, 75 L.Ed. 629 (1931); *Brinegar v. United States,* 338 U.S. 160, 175–176, 69 S.Ct. 1302, 1310–1311, 93 L.Ed. 1879 (1949)."

*See State v. Spoke Committee, University Ctr., etc.,* 270 N.W.2d 339 (N.D.1978); *State v. Mertens,* 268 N.W.2d 446 (N.D.1978); *Iverson v. State of North Dakota,* 480 F.2d 414 (8th Cir. 1973), *cert. den.* 414 U.S. 1044, 94 S.Ct. 549, 38 L.Ed.2d 335 (1973); and *State v. Dove,* 182 N.W.2d 297 (N.D.1970).

■ The problem of determining the existence of probable cause to issue a search warrant is increased when the affiant has obtained his information through an informant. In *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the United States Supreme Court developed the basic framework for determining the existence of probable cause when it is based on hearsay information given to the affiant by an informant. The United States Supreme Court's analytical framework, now known as the *Aguilar* Two-pronged Test,[2] provides:

> "Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant . . . the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed . . . was 'credible' or his information 'reliable'." 378 U.S. at 114, 84 S.Ct. at 1514.

■ The magistrate must be informed of enough underlying circumstances to enable him to determine that the informant's observations regarding the commission of a crime were accurate (The Basis of Knowledge Prong); and that the informant was credible or his information was reliable (The Veracity Prong). Both prongs of the test must be met. *See Spoke, supra; Mertens, supra;* and *Dove, supra.*

In *Stanley v. State,* 19 Md.App. 507, 313 A.2d 847, 858 (1974), Judge Charles E. Moylan, Jr.,[3] outlined the *Aguilar* Two-pronged Test as follows:

> "The *Trustworthiness* of Hearsay
> I. The *Basis of Knowledge* Prong
> II. The *Veracity* Prong
>    A. The *Credibility* Spur
>    B. The *Reliability* Spur."

■ The "basis of knowledge" prong requires that the magistrate inquire into the manner in which the informant obtained his information. As was stated in *Stanley, supra* 313 A.2d at 861:

> "The 'basis of knowledge' test is not concerned one whit with an informant's honesty or 'veracity'. It is concerned, rather, with conclusionary validity. Even assuming 'credibility' amounting to sainthood, the judge still may not accept the bare conclusion of that 'credible' informant anymore than he may accept the bare conclusion of a sworn and known and trusted police-affiant. *Nathanson v.*

---

**2.** *See* Moylan, Hearsay and Probable Cause: An Aguilar and Spinelli Primer, 25 Mercer L.Rev. 741 (1974).

**3.** Judge Moylan authored the Mercer Law Review article cited in Footnote 2.

*United States,* 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933); *Giordenello v. United States,* 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958). To do so would be an unconstitutional delegation of the decision-making function which the Fourth Amendment lodges exclusively in the judge himself.

"The 'basis of knowledge' prong assumes an informant's 'veracity,' and then proceeds to probe and test his conclusion: ('What are the raw facts upon which the informant based *his* conclusion?' 'How did the informant obtain those facts?' 'What precisely did he see or hear or smell or touch firsthand?' 'If he heard the facts from someone else, what makes that third person "credible" and how did that third person come by the knowledge?'). The judge must ascertain the source for the raw data—the product of someone's senses—and then weigh that data for himself. He is concerned not with that part of an affidavit or testimony which provides information *about* the informant but with the recitation of the story coming *from* the informant."

▮ The "basis of knowledge" prong is most easily satisfied in cases where the informant saw, touched, heard, smelled, or otherwise obtained his knowledge firsthand through his own senses. Even if the affidavit fails to allege that the informant obtained his knowledge firsthand, the "basis of knowledge" prong can be satisfied by using the "self-verifying detail" technique described in *Spinelli v. United States,* 393 U.S. 410, 416, 89 S.Ct. 584, 589, 21 L.Ed.2d 637 (1969):

> "In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation."

The United States Supreme Court in *Spinelli, supra* 393 U.S. at 417, 89 S.Ct. at 589, referred to the fact situation in *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), as an example of sufficiently detailed information from an informant from which "a magistrate . . . could reasonably infer that the informant had gained his information in a reliable way". *See Mertens, supra* 268 N.W.2d at 449–450.

▮ In Schmeets, David Weigel stated in his affidavit (1) that the Harvey Police had picked up two juvenile girls; (2) that the girls were under the influence of drugs; (3) that the girls had obtained the drugs from Schmeets; (4) that the girls had been at Schmeets' apartment; and (5) that the girls had stated that cocaine, hashish, and marijuana were located at Schmeets' apartment. Although the suppression hearing testimony shows that the girls had firsthand knowledge of all of the information contained in the affidavit, the affidavit does not state that they had such firsthand knowledge. The second, third, and fourth grounds for the issuance of the search warrant listed in the affidavit state conclusions drawn by the Harvey Police. The fifth ground implies firsthand knowledge by the girls, but it merely states a conclusion by the girls that drugs were located at Schmeets' apartment. An affidavit that merely states conclusions without stating underlying circumstances is insufficient to establish probable cause. *Spoke, supra* 270 N.W.2d at 342–343.

The affidavit should have affirmatively stated that the girls had told the police that they had been at Schmeets' apartment; that they had been given drugs at Schmeets' apartment; that they were under the influence of drugs; that they had seen other drugs at Schmeets' apartment, including a detailed description of the types, colors, quantities, specific locations within the apartment of the other drugs, and why they believed the substances were illegal drugs; and that the drugs were still at Schmeets' apartment at the time when they left. The affidavit should also have contained a statement regarding the transmission of the information from the girls to

Police Officer Barry Weigel to Deputy Sheriff David Weigel and should have included specific dates and times when the acts took place.

■ The second prong of the *Aguilar* test is the "veracity" prong, which may be satisfied either by showing that the informant has good credibility or that his information is reliable. In analyzing the "veracity" prong, it should be noted that the *Aguilar* veracity requirements are to be more strictly applied when the informant is an unnamed informant from the "criminal milieu", than when the informant is a named good citizen informant, an innocent victim of the crime, or otherwise is a disinterested observer. *See People v. Glaubman,* 175 Colo. 41, 485 P.2d 711 (1971); *Schmidt v. State,* 17 Md.App. 492, 302 A.2d 714 (1973); *Dawson v. State,* 14 Md.App. 18, 284 A.2d 861 (1971); and *State v. Roth,* 269 N.W.2d 808 (S.D.1978).

In describing the "veracity" prong, *Moylan, supra* 25 Mercer Law Review at 761, stated that the

" 'credibility' of the person and the 'reliability' of his information are but facets of the same 'veracity' phenomenon * *, the Supreme Court appears to feel that there is some value in grouping approaches to veracity into two separate, albeit related, sub-categories. It would appear that an informant's 'credibility' involves more his inherent and ongoing character as a person—his reputation as a truth-speaker or his demonstrated history of truth-speaking. Informational 'reliability,' on the other hand, as something distinct from the 'credibility' of the source, would seem to involve circumstances assuring trustworthiness on the particular occasion of the information's being furnished."

■ The veracity prong may be satisfied by establishing the informant's inherent credibility or by establishing his credibility based upon past information that he has given to the police regarding crimes. Past information given by the informant should be specific regarding the number of times he gave information, types of infor-

mation, and results. *See Mertens, supra* 268 N.W.2d at 450; *McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); and *Dawson, supra.*

■ Even if the informant's credibility is not sufficiently proved, the veracity prong may be satisfied by proving that his information is reliable. An affidavit or accompanying testimony may establish the information's reliability by proving that the informant's information constituted an admission against his penal interest. *See United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); *State v. Appleton,* 297 A.2d 363 (Me.1972); *People v. Wolzer,* 41 A.D.2d 679, 340 N.Y.S.2d 953 (1973); and *People v. Bolender,* 24 Ill. App.3d 804, 322 N.E.2d 624 (1974). *But see People v. Pelton,* 27 Ill.App.3d 781, 327 N.E.2d 360 (1975). The court must determine that the informant's declaration against his penal interest was sufficient to ensure that the information was reliable.

■ If the veracity prong is not satisfied by establishing the informant's credibility or the information's reliability, the information given to prove veracity can be buttressed by the "independent police verification" technique suggested in *Spinelli, supra* 393 U.S. at 415–416, 89 S.Ct. 584. When the police have verified part of the informant's information by independent investigation, the corroboration lends credence to the remaining unverified information and may buttress the information to satisfy the *Aguilar* veracity prong. *Spinelli, supra* 393 U.S. at 415–416, 89 S.Ct. 584; *Draper v. United States, supra*; and *Hignut v. State,* 17 Md.App. 399, 303 A.2d 173 (1973).

*Spinelli, supra* 393 U.S. at 415–416, 89 S.Ct. at 588–589, described the "independent verification" technique:

"The informer's report must first be measured against *Aguilar's* standards so that its probative value can be assessed. If the tip is found inadequate under *Aguilar,* the other allegations which corroborate the information contained in the hearsay report should then be considered.

At this stage as well, however, the standards enunciated in *Aguilar* must inform the magistrate's decision. He must ask: Can it fairly be said that the tip, even when certain parts of it have been corroborated by independent sources, is as trustworthy as a tip which would pass *Aguilar's* tests without independent corroboration? . . . A magistrate cannot be said to have properly discharged his constitutional duty if he relies on an informer's tip which—even when partially corroborated—is not as reliable as one which passes *Aguilar's* requirements when standing alone."

■ In Schmeets, the affidavit did not allege that the juvenile girls were credible. In fact, the statement that the girls were under the influence of drugs may have detracted from their credibility. When an affidavit purports to meet the veracity prong by establishing credibility, the supporting information should be sufficiently detailed.

The affidavit apparently attempted to satisfy the veracity prong by establishing that the girls' information was reliable because they had made declarations against their penal interests. Although we do not decide in this case whether or not the girls' statements regarding their use of drugs were sufficient to satisfy the veracity prong, we suggest that future affidavits for search warrants should contain more detailed information regarding the circumstances of the admission against the informant's penal interest.

■ Finally, we note that an affidavit must establish not only the informant's veracity but also the veracity of every person in the information chain. Although a law enforcement officer is considered to be a reliable source and no special showing of his veracity is required, the affidavit in Schmeets should have stated that Police Officer Barry Weigel had obtained the information from the girls and had transmitted it to Deputy Sheriff David Weigel. *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *Whiteley v. Warden,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); *United States v. Various Gambling Devices,* 478 F.2d 1194 (5th Cir. 1973); *Hughes v. United States,* 363 A.2d 284 (D.C.App.1976); *State v. Culotta,* 343 So.2d 977 (La.1976); *State v. Mandravelis,* 114 N.H. 634, 325 A.2d 794 (1974). *See* 1 LaFave, Search & Seizure: A Treatise on the Fourth Amendment, § 3.5(a) (1978).

We conclude that the affidavit of Deputy Sheriff David Weigel was conclusory and contained insufficient underlying facts to establish probable cause for the issuance of the search warrant. We hold that the December 16, 1977, search of Schmeets' apartment violated the Fourth Amendment of the United States Constitution and § 18 of the North Dakota Constitution because the affidavit failed to establish probable cause for the issuance of the warrant. We further hold that the district court erred in denying Schmeets' motion to suppress the evidence obtained in the December 16, 1977, search of his apartment.

In analyzing Schmeets' contention that the search warrant was improperly executed at night, we must consider Rule 41(c), N.D.R.Crim.P., which provides, in pertinent part:

" . . . The warrant shall be served in the daytime, unless the issuing authority, by appropriate provision in the warrant, and for reasonable cause shown, authorizes its execution at times other than daytime. . . ."

Rule 41(h), N.D.R.Crim.P., defines "daytime" to mean the hours from 6 a.m. to 10 p.m. Schmeets claims that the search of his apartment which took place between 1:30 a.m. and 3 a.m. violated Rule 41(c), N.D.R.Crim.P., because the issuing judge failed to include an appropriate provision in the warrant authorizing a nighttime search.

The search warrant in question was drafted on a printed search warrant form which contained the following provision:

"You therefore are commanded, in the daytime (or at any time of the day or night) (As the case may be, according to N.D.C.C. 29–29–10) to make immediate search . . . ."

The warrant form indicates that the judge is required to strike the "(or at any time of the day or night)" language in the warrant in order to restrict the search to the daytime only. The warrant form's design could undoubtedly cause confusion regarding which time is authorized for a search.

The issuing judge did not strike out any language on the search warrant. He testified at the suppression hearing that he had authorized the search warrant's execution at night by not striking out the phrase in the warrant "(or at any time of the day or night)".

Pursuant to Rule 41(c), N.D.R. Crim.P., no search warrant may be executed at night unless the issuing judge authorizes its execution at night. A judge authorizes the execution of a search warrant at night by making an appropriate provision in the warrant after the applicant for the warrant has shown reasonable cause why it must be executed at night rather than in the daytime.

The purpose of Rule 41(c), N.D. R.Crim.P., is to protect citizens from being subjected to the trauma of unwarranted nighttime searches. Courts have long recognized that nighttime searches constitute greater intrusions on privacy than do daytime searches. *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Jones v. United States,* 357 U.S. 493, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958); *United States v. Ravich,* 421 F.2d 1196 (2d Cir. 1970), *cert. den.* 400 U.S. 834, 91 S.Ct. 69, 27 L.Ed.2d 66 (1970); and *State v. Iverson,* 187 N.W.2d 1, 32–33 (N.D.1971), *cert. den.* 404 U.S. 956, 92 S.Ct. 322, 30 L.Ed.2d 273.

Rule 41(c), N.D.R.Crim.P., ensures that an impartial issuing authority will determine if there is reasonable cause to justify a search at night. The requirement that the issuing judge must authorize a nighttime search "by appropriate provision in the warrant" prevents nighttime searches unless the issuing judge has considered the matter, has found reasonable cause for a night search, and has affirmatively authorized it.

The warrant form used in this case is not ideal because it can create doubts regarding whether or not the issuing judge specifically authorized that the warrant could be executed at night. It would be beneficial to devise a different search warrant form that specifically lists the alternative times of execution and requires that one of the alternatives be stricken. Although the search warrant form used in the instant case is not a model to be followed by law enforcement personnel, we need not decide the nighttime search issue in this case because we have held that the search warrant was invalid on constitutional grounds.

The judgment of the district court is reversed and the case is remanded for a new trial.

ERICKSTAD, C. J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.