THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v THOMAS ALAXANIAN, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHARLES LANIER, JR., Appellant.

Third Department, July 31, 1980

### APPEARANCES OF COUNSEL

*James D. Linnan* for Thomas Alaxanian, appellant.

*Jay Goldberg, P. C.,* and *Hoffman Pollok Mass & Gasthalter (John L. Pollok* of counsel), for Charles Lanier, Jr., appellant.

*Sol Greenberg, District Attorney (George H. Barber* of counsel), for respondent.

### OPINION OF THE COURT

HERLIHY, J.

Defendants Thomas Alaxanian and Charles Lanier were

indicted for the crimes of robbery in the first degree and assault in the second degree. It was the People's theory that on August 12, 1978, the defendants and three other men traveled to the home of William Livingston in Berne, New York, where they stole his property, consisting of money and furniture, while using physical force and a dangerous instrument to overcome his resistance. The People's case was built around the testimony of Jack Reed, who had previously admitted his participation in the events of August 12 and had been allowed to plead guilty to the crime of robbery in the second degree in exchange for his testimony implicating Alaxanian and Lanier, and the evidence obtained as a result of the search warrants. Both defendants attempted to prove that they were not with Reed in Berne, New York, at the time Livingston was robbed. Following a joint trial, Alaxanian and Lanier were found guilty of robbery in the first degree. Alaxanian was given an indeterminate sentence of 8⅓ to 25 years, while Lanier was sentenced as a predicate felon to 12½ to 25 years in prison.

When the applications were made to the County Court for the issuance of the search warrants in these actions, the police had knowledge that the defendants were the perpetrators of the crime for which they had been convicted; the police knew the address of the defendant as set forth in each search warrant; and they had knowledge that the defendants had stolen personal property from the premises where the crime had been committed. In addition, Investigator Baker stated: "From frequent observation I have observed furniture and other unknown articles going back and forth between these residences. I further observed, based upon frequent observation, that the above-named six individuals are continually in one anothers company and continually move freely between the addresses noted."

The decision of Judge HARRIS, dated June 20, 1979, in denying the suppression of tangible property, with reference to the issuance of search warrants, stated: "It is the duty of the magistrate in issuing a search warrant to narrow down as much as possible the geographic limits of the area to be searched. Under the circumstances of the instant case, there were no narrower limits to which the search could reasonably have been confined. [3]" The numeral "3" identified a footnote, which stated: "The question in the instant case is not that of particularity. The items to be searched for are described with

particularity, as well as the places to be searched (namely, 55 Rensselaer Street and 295-331 Ninth Street). The question in the instant case is strictly that of probable cause and reasonableness. There certainly was probable cause to believe that the stolen property was in one of the buildings to be searched or divided among all of them, and the unique interrelationship between the buildings and persons involved in this case made it reasonable to authorize a search in all of these buildings for the very specific stolen property being sought."

It would appear to this court that the police officers requesting the warrants for searching the premises were exercising good judgment based on probable cause, knowing the parties involved and the manner and method of their operations. The warrants were, in our opinion, properly issued. (See *People v Magiril,* 31 NY2d 802, 803, where search warrants were obtained for two apartments of the defendant; *People v Glen,* 30 NY2d 252, 259, where the court said: "The ultimate answer to the problem is that as long as the evidence creates substantial probability that the seizable property will be on the premises when searched, the warrant should be sustained."; *People v Wolzer,* 41 AD2d 679, 680-681, where the court stated: "The facts presented seem to fit precisely within the rule set forth by Mr. Chief Justice Burger in *United States v Harris* [403 US 573] when he said at page 583: 'Common sense in the important daily affairs of life would induce a prudent and disinterested observer to credit these statements. People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions.' "; *People v Tolentino,* 40 AD2d 596-597, where the court stated: "Probable cause is the sum total of layers of information and the synthesis of what the police have heard, what they know, and what they observe as trained officers. [See *Smith v. United States,* 358 F. 2d 833, 837 (BURGER, J.), cert den 386 U. S. 1008.] In dealing with probable cause, we deal with probabilities; these are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. [See *Brinegar v. United States,* 338 U. S. 160, 175.]")

The dissent seems to argue that such facts and circumstances are sufficient for the issuance of a warrant as to 295-331 Ninth Street, but not so as to 55 Rensselaer Street.

As to the disputed portion of the Curtis affidavit, no hearing was required as the undisputed and remaining allegations

therein were sufficient to require the issuance of a search warrant to recover stolen property.

At the trial, no exceptions were taken to that part of the Judge's charge which the defendants challenge on this appeal, and further, a reading of the charge, concise and understandable, establishes that the jury had a complete knowledge of the problems involved. The fact that the word "intent" was not uttered is of little import where the facts and circumstances could lead to only one conclusion: that the defendants went to the property with the intent to take whatever was available as a payment against an alleged debt. The Judge charged only one crime, robbery in the first degree, to which there was no objection (People v Sim, 53 AD2d 992, affd 44 NY2d 758).

We have examined the other alleged errors and find them to be without merit or, in any event, not sufficient to require a new trial.

The judgments should be affirmed.

MAHONEY, P. J. (dissenting). Although each defendant appealed separately from the judgment of conviction, they raise identical points on appeal. It is argued that (1) the pretrial motion to suppress property seized from Alaxanian's apartment was improperly denied; (2) defendants were entitled to a trial order of dismissal since there was insufficient corroboration to support the accomplice testimony of Reed; (3) Reed should not have been allowed to make an in-court identification of defendants where the People failed to notify defense counsel that a prior photographic identification had been made; (4) the trial court erred by failing to charge the jury that intent was an element of the crime of robbery in the first degree; and (5) the sentences imposed were excessive.

Defendants' first argument raises the issue of whether there was probable cause for the issuance of the search warrant covering Alaxanian's apartment at 55 Rensselaer Street in the City of Troy. The warrant was one of five issued on December 22, 1978, some four and one-half months after the robbery, upon the application of Senior Investigator Curtis and supported by his affidavit and the affidavit of Investigator Baker. The warrants covered five residences located near one another in the City of Troy (295, 297, 299 and 331 Ninth Street, in addition to 55 Rensselaer Street) and authorized the search of the entire premises at each location for specific items of household furnishings which were taken from the Livingston

home. A wooden dresser, a mirror and decorative wall plaques were seized from Alaxanian's apartment and were sought to be suppressed by the defendants.

In Investigator Curtis' affidavit, it is stated that Reed had implicated Lanier and Alaxanian in the robbery and had witnessed the unloading of the stolen property at 297 and 299 Ninth Street in the presence of Alaxanian, Martin Pulver and James Harwood. Investigator Baker averred in his affidavit that he had been conducting an investigation of the Hell's Angels Motorcycle Club and had made numerous observations of the residents living at the Ninth Street and Rensselaer Street addresses in connection therewith. Baker stated that he had observed "furniture and other unknown articles" going back and forth between the five locations and noted that the inhabitants of the residences, which included Alaxanian, Lanier, Harwood and Pulver, were continually in one another's company and moved freely between the residences.

It is my opinion that the facts alleged in the affidavits of Investigators Curtis and Baker do not create a "substantial probability that the seizable property will be on the premises when searched" (People v Glen, 30 NY2d 252, 259, cert den sub nom. Baker v New York, 409 US 849). Investigator Curtis' affidavit relies upon the hearsay information received from an informant, Jack Reed, and is not based upon his personal observations. Thus, to establish probable cause necessary for the issuance of a search warrant, it must be shown that the informant is reliable and has a sufficient basis for concluding that the subject of the tip is engaged in illegal activities (Aguilar v Texas, 378 US 108, 114; People v West, 44 NY2d 656, 657; see Spinelli v United States, 393 US 410).

The suppression court concluded that the statement of informant Reed was reliable as a declaration against his penal interest (see People v Brown, 26 NY2d 88) and sufficiently based since it was founded upon his own observations and participation in the robbery. I agree that the first prong of the Aguilar test (supra), reliability of the informant, was met in the present case. However, I do not believe that the second prong of the test, the so-called "basis of knowledge" test (People v Hanlon, 36 NY2d 549, 556), has been satisfied. The key question, which was not addressed by the suppression court, was whether Reed had a sufficient "basis of knowledge" for concluding that the stolen property would be found at 55 Rensselaer Street. The affidavit of Senior Investigator Curtis

indicates that Reed only saw the property being unloaded into two other residences (297 and 299 Ninth Street) and makes no reference to 55 Rensselaer Street. It thus seems clear that any finding of probable cause justifying a search of the premises at 55 Rensselaer Street must rely on Investigator Baker's affidavit since Reed's statement, standing alone, was insufficient to support the issuance of the search warrant (see *People v Wirchansky,* 41 NY2d 130, 135).

Investigator Baker's affidavit attempts to portray the Hell's Angels group as a communal organization by stating that they were always together, enjoyed access to each other's homes and exchanged household effects. The suppression court concluded, despite the physical separateness of the locations and the apartments located therein, that the buildings constituted a functionally and operationally connected communal compound. Such a characterization is unwarranted. The mere fact that a group of individuals associate and freely exchange "furniture and other unknown articles" does not raise a substantial probability that specific stolen items would be found in Alaxanian's apartment at 55 Rensselaer Street. It is undisputed that neither Reed, Curtis nor Baker ever observed any of the property listed on the application for the search warrant for 55 Rensselaer Street either being moved into the premises or actually in place there. No illegal activity was observed at 55 Rensselaer Street and the sharing of personalty not suspected of being contraband is as consistent with innocent behavior as with criminal conduct (see *People v Brown,* 24 NY2d 421, 424; *People v Elwell,* 66 AD2d 172, affd 50 NY2d 231). Therefore, the conclusory statement contained in Investigator Curtis' affidavit that there was reasonable cause to believe that the stolen property would be found in the home of Thomas Alaxanian since he was a member of the Hell's Angels Motorcycle Club is one of conjecture based on suspicions and does not support a finding of probable cause. The defendant's motion to suppress the property seized from 55 Rensselaer Street should have been granted.

Moreover, assuming *arguendo* that the search warrant for 55 Rensselaer Street was properly issued, facts discovered subsequent to the suppression court's decision should have resulted in the property being suppressed. A tape recording was turned over to defense attorneys on the eve of trial which contained the interview between Investigator Curtis and informant Reed that served as the basis for Curtis' application for

the five search warrants. The recording indicated that Reed only stated that he saw one item of furniture, i.e., a chest of drawers, being unloaded into 299 Ninth Street and that the majority of the stolen furniture was to be sold. The recording further disclosed that Reed did not tell Investigator Curtis that Harwood and Pulver were present when the furniture was unloaded. The presence of Harwood and Pulver, two nonparticipants in the robbery, was important to the issuance of the search warrants for 295 and 331 Ninth Streets and 55 Rensselaer Street, the three locations not directly involved in the unloading of the stolen property, since it demonstrated the closeness of the Hell's Angels.

It was this new information which defense counsel brought to the trial court's attention immediately prior to the selection of the jury. The prosecution did not dispute that Investigator Curtis' affidavit contained faleshoods which, under the circumstances, must be presumed to have been made deliberately or with reckless disregard for the truth. Since there would not have been probable cause to support the issuance of the search warrant for 55 Rensselaer Street if the disputed portions of the Curtis affidavit were set aside, the trial court erred in not conducting a hearing to determine whether the statements were truthfully made *(Franks v Delaware,* 438 US 154, 155-156; see *People v Alfinito,* 16 NY2d 181).

Having concluded that the property seized from Alaxanian's apartment at 55 Rensselaer Street should have been suppressed, I now turn to an examination of what effect that error had on each of the defendants. Turning first to defendant Alaxanian, I find no legally admissible evidence to corroborate Reed's accomplice testimony. Corroborative evidence necessary to support the testimony of an accomplice need only "tend * * * to connect" the defendant with the commission of the crime (CPL 60.22, subd 1). However, once the property found at Alaxanian's apartment is set aside, the People's proof fails to meet even this minimal standard. The People contend that statements made by Alaxanian as to whether he wore a beard during the latter half of 1978 were false and indicated a consciousness of guilt. While it is true that certain false statements may evidence a consciousness of guilt sufficient to corroborate accomplice testimony *(People v Luongo,* 47 NY2d 418, 429-430; *People v Leyra,* 1 NY2d 199, 208), the probative weight to be given such statements depends on the facts of each case *(People v Benzinger,* 36 NY2d 29, 34). Where, as

here, the alleged false statement does not deal with a subject that is inherently probative of defendant's participation in the crime, e.g., an alibi or the destruction or concealment of evidence, it should not be found to indicate a consciousness of guilt on the part of the defendant (see *People v Leyra*, 1 NY2d 199, 208, *supra*). Since there was not sufficient corroborating evidence to allow the case against Alaxanian to go to the jury, his motion for a trial order of dismissal pursuant to CPL 290.10 should have been granted. Accordingly, the indictment against him should be dismissed.

The suppression error does not require the same result for defendant Lanier. It must be noted that the property illegally seized was taken from Alaxanian's apartment and not from Lanier's. Thus, the question of whether Lanier's Fourth Amendment rights were violated must be addressed, since "rights assured by the Fourth Amendment are personal rights, [which] * * * may be enforced by exclusion of evidence only at the instance of one whose own protection was infringed by the search and seizure" *(Simmons v United States,* 390 US 377, 389; accord *Alderman v United States,* 394 US 165, 174). Since the record in this case discloses that Lanier was co-owner of the property at 55 Rensselaer Street with one Philip Kramer, he may contest the validity of the seizure since he had a legitimate expectation of privacy in the searched premises by virtue of his proprietary interest *(Brown v United States,* 411 US 223, 229; see *Katz v United States,* 389 US 347, 353).

Lanier's counsel also moved for a trial order of dismissal at the close of the People's case. Unlike the situation involving Alaxanian, however, there was other evidence introduced besides the property seized at 55 Rensselaer Street which tended to connect Lanier with the commission of the robbery. Lanier was the owner of a truck with a furniture logo imprinted on it which was seen at Livingston's home on the date of the robbery by a neighbor. Also, the physical description of Lanier given by Livingston, particularly with respect to the numerous rings he wore on his fingers, was essentially in accord with Reed's description. Whatever minor discrepancies may have existed were for the jury to weigh, as was the sufficiency of the corroborating evidence *(People v Fiore,* 12 NY2d 188, 201-202; *People v Hudson,* 70 AD2d 740; *People v Ross,* 68 AD2d 962). Although the error made in failing to suppress the seized property does not require the dismissal of

the indictment against Lanier, as was the case with his codefendant, it was of a constitutional dimension since it involved the right to be protected against unreasonable searches and seizures (US Const, 4th Amdt; NY Const, art I, § 12). Since I cannot say that the error was harmless beyond a reasonable doubt *(People v Crimmins,* 36 NY2d 230, 237), Lanier's conviction should be reversed and a new trial ordered.

Accordingly, the judgment convicting both defendants of the crime of robbery in the first degree should be reversed, the indictment against Thomas Alaxanian dismissed, and a new trial ordered for Charles Lanier, Jr.

GREENBLOTT, MAIN and MIKOLL, JJ., concur with HERLIHY, J.; MAHONEY, P. J., dissents and votes to reverse in a separate opinion.

Judgments affirmed.